Arguments not to exceed 15 minutes per side. Mr. Foreman for appellant. Good morning. I'm Ed Foreman. I represent the appellant in this case, Dennis Wolfe. Mr. Wolfe is here today to watch the argument. I think we've reserved three minutes for rebuttal. May it please the court, the district court in this case correctly found that U.S. Steel regarded Mr. Wolfe as disabled from a broad range of jobs. The rationale used by U.S. Steel to determine that a monocular individual could not do the utility technician two position would disqualify him for a broad range of jobs. And we want to look at the things that they considered. The first is, Mr. Wolfe. Can I stop you on the regarded as just to make sure I'm grasping this? So the regarded as point is to satisfy that. It's not, you don't satisfy that by showing this person can't perform that job. You have to say the regarding them as disabled and to say they're regarded as disabled means to show they can't do most jobs. That is correct. So the person that supplies the evidence that's helpful to the judge is Wilkinson. And at the time, Wilkinson is not, I guess he later becomes the plant manager, but he's not the plant manager at the time he says this. And I mean, it's kind of hard to understand exactly what he is saying, to be honest with you. But I thought the troubling point from your perspective was he wasn't the plant manager. So it seems in context either he was talking only about a limited class of jobs that would be problematic, or if he was talking about the whole plant, I don't quite understand how he could say that if he wasn't the plant manager. How would he know? Because he was a decision maker. He was the individual rendering the opinion as to whether or not Mr. Wolf could work there. Yeah, but maybe I didn't make the point clear. If his point, this is what I think he's saying. This is the mistake I think the district court made. I think he's simply saying he can't do this job. And that's the premise of the regarded as ruling. And if that's all he's saying, that doesn't prove they regarded him as disabled. That proves they regarded him as not being able to do this job. That's not regarded as claim. Are you following what I'm saying? I am. And I would point out factually that at that time, he had worked in two-thirds of the plant. And what he said was we do not have a... He being Wilkinson? Yes, yes. Thank you. What he said at the time was we do not have a position that he could perform safely on the plant floor. And he had worked in at least two-thirds of the plant, if not more. And I... And additionally... I mean, maybe your best way of thinking about this is just a summary judgment. And Wilkinson's remarks are a little unclear. But the question is whether there's a tribal issue of fact. And maybe that's the way to think about this. There's enough evidence there to say there's a tribal issue of fact until there's further evidence either about Wilkinson's ability to even say whether he couldn't do any of these other jobs or not. Well, we think that there is more in addition to just Wilkinson's opinion in terms of how Mr. Wolf was regarded as unable to do a broad classification of jobs. The first thing is we're talking about the utility technician two position. And as Mr. Wilkinson also said, that position encompasses many different positions, many different jobs, each one running a different piece of equipment, and each one having a different responsibility. We can also look at the position description for the utility technician position. And if you look at that, you will see that it basically describes every process in the manufacturing process. If he's unable to do the things which are set forth in that job description, he's basically excluded from doing any manufacturing job in the United States. Now... For what it's worth, one of the hard things about this case, and there's this tension in the evidence, is that Mr. Wolf seems to be a guy that can do lots and lots of jobs. And it seemed the employer understood that. And so that's a very strange set of facts to then say this same individual was regarded as disabled, which is to say regarded as not being able to perform any jobs. I thought this was a case in which everyone, what made it hard is everyone knew, he's done lots of work like this, of course he can work safely. Like, that was your best theme in the case, and why are they suddenly saying no to this job? So that's why so much of the evidence to me seems to be evidence saying we regard him as not being able to do this job. That's why I'm saying this. Oh, thank you, Your Honor. So here's what I would say to that. They did not consider Mr. Wolf's ability to do the job. Instead, the question posed to Mr. Wilkinson was would an individual with this impairment, a monocular individual, know specific information about Mr. Wolf and his experience? But just would a monocular individual be able to perform this position? Well, if we're moving from regarded as disabled to the individualized inquiry for a second here, you basically say there was no individualized inquiry. And I'm finding that hard to understand because of the number of steps that U.S. Steel went through once they got the results of the eye examination. So the only way I can really make sense of that argument, and tell me if I'm misunderstanding it, is for you to say, yes, they talked to a lot of people to try to figure out how his condition would or would not permit him to be able to do that job, which I think is an individualized inquiry. But they had to take one, at least one additional step, which was to then go back and compare what he had done with other employers and other jobs. That is correct. Now, on that last step, do you have any authority that says the individualized inquiry needs to determine how he did with other employers who may well have different, I'll bet, lesser safety standards? So in other words, what difference does it make if he successfully worked at other jobs, other than to say that he's a good worker, if that work environment on the other shop floor simply had a lesser safety standard? So in other words, you're sort of importing the lowest common denominator safety standard into U.S. Steel's employment practices. And I'm trying to figure out where the authority for that comes from. Thank you, Your Honor. The authority for that is the case of Keith v. City of Oakland. And the reason that's authority is because in this case, Mr. Wolf was not measured. In Keith, he said, we do not measure the impairment. We measure the individual. And I see what you're saying. But the inquiry was directed to Mr. Wolf's impairment, not to Mr. Wolf. His history, his personal characteristics were not considered. And that's... I think what you're saying is that there's no difference between setting up a standard that says a monocular person may not hold these jobs and saying that a deaf person may not be a lifeguard. That it's the same thing. You set up these seemingly objective criteria. You test that person with respect to those criteria. And if they don't meet the criteria, you rule them out without asking whether, notwithstanding those impairments, they're going to do the job. That is correct. Although we would challenge the idea that the requirements themselves were objective. Rather, we think that they are subjective, which are based on stereotypes. Specifically, Mr. Wilkinson's experience playing baseball and his... I don't mean objective in terms of fair and corresponding. I mean it's something you can know is an objective fact and then you check it off. That is correct. So the point here... But they didn't check off he's monocular and therefore he can't have this job. They went through several other inquiries to determine whether that monocular condition affected his ability to do this particular job. Did they not? Well, yes. We looked at the rationale in terms of showing whether or not somebody is regarded from a broad range of jobs. But that is correct. But the critical point here... So what difference does it make whether somebody can play baseball as to whether they do or do not pose a risk on a shop floor with this sort of moving dangerous equipment? I don't get that. Yes. Well, I don't either. And it doesn't matter. It's a stereotype. So I can ignore that. You're the one that brought it up. I didn't bring it up. Oh, right. The only reason we brought that up was to show that this is the stereotype. This was the subjective opinion-making process which got us here. Now, understanding... Yes, I think that if that gets that across. What about this standard in the federal... What is it called? The federal motor carrier's law that they have, I think, very similar vision requirements for driving a federal motor carrier. Okay? Yes. Am I right about that? Oh, yes, you are, Your Honor. So I take it the way those work is, after a lot of research, they've decided these are things companies have to do. So there's a federal agency saying to companies, you have to have these rules, eligibility requirements, for motor carrier drivers, right? Correct. So that doesn't involve an individualized inquiry? Yes, but that is complying with federal law. And I think that that's the case with Albertson v. Kirkenberger, the Supreme Court case. And in that, they said, monocular sight is not per se disabled, but an employer has to be able to comply with federal law. But help me with this, I guess my common sense way of looking at it, but maybe I'm missing something. I consider a shop floor with these forklifts where you have 360 degrees of potential risk way more dangerous and prone to accident than someone driving down highways watching for people in their lanes, passing, they're passing people or people coming across new highways. And I don't understand why the one is okay and the other isn't as a qualification. I think that we can look at a case that was cited by a defendant out of the Ninth Circuit, the Bates case. And that said, look, the fact that there is a federal regulation for a different job can be evidence for them to meet the standard. However, the weight of the regulation of that evidence is a question of fact to be decided by a jury. Are these things, as you're explaining, which apply to long-haul truck drivers, interstate truck drivers, are these applicable to this shop floor? That is a question of fact. I mean, the test is whether you don't offer someone a job because of their disability as opposed to in spite of it, right? And here, the in spite of is, well, we have these requirements of certain vision requirements and it's for a public safety reason and proof that we're not making this up as a pretext for discrimination is they use the same thing in a far less dangerous setting. Well, we think that that's an issue of fact as to whether or not it would be more dangerous or not, especially given the fact that he was able to perform a similar position for 19 years. We think that that is a question of fact for a jury. Let me explore that for just a second. Let's say you had two hypothetical applicants. One had no prior experience in the steel industry, similar shop floors, dangerous equipment whatsoever. The other one did and had successfully performed the job according to whatever that employer's specifications were. Using the same standards that U.S. Steel has here, could U.S. Steel then refuse to hire the person who had no experience based upon the same testimony that we have here? Absolutely, Your Honor. They could. We have a U.S. Steel. They could, right? I have to explain. They could refuse to hire him. So here the error then was that because this gentleman had prior experience, you have to take that one additional step that we talked about earlier and explore how he was able to do the job in other locations. That's great. I see I'm out of time. Can I still respond? Yes. So the answer to that is yes? Yes, because U.S. Steel... what the standards were in the other plants and contact the employer and, geez, did this guy ever have any sort of problems? Those are all the types of inquiries that would be necessary for this individualized inquiry as you've formulated? No, Your Honor. I think that the standards set forth in U.S. Steel's own policy stating that these standards can take into account an employee's history of past successful job performance would be adequate. We do say that they have to do more than they did. So just out of... I think I may be asking a similar question to Judge McKeague. So imagine an employer without any talk about prior jobs. Is it your view that this kind of requirement just always goes to a jury? In other words, you know, the first in person applies. They don't get the job because they enforce this requirement and that creates a triable issue fact and you go to a jury and in that case the employee wins. Next case they say, well, we're still going to enforce this. We think it's needed for public safety and it goes to a jury and in that case they win. It just keeps going along that way? I mean, is that how it works? I mean, so imagine every employee is exactly the same. They're good people. They've had lots of other jobs. But the company says, you know, we're just... public safety is winning out here. You just have different juries saying different things about whether there was a violation. Well, you know, there are circumstances, Your Honor, where an individual would have no ability to compensate. We would concede that in the example of a blind individual is never going to be able to fly an airplane. But we think that an employer does have to make an inquiry and we don't think it's always a question for a jury, but they have to do something to actually reasonably... Your focus is on the individualized inquiry as opposed to whether they, you know, their defense of whether you want to call it business necessity or having a non-discriminatory reason for not hiring. That is correct. That's our understanding of the Keith case, saying that they need to go beyond just the application... Let me put the point another way. If we decide there's not a Keith problem here, which is to say there's not an individualized inquiry problem, is the case over? If you determine there is no individualized inquiry problem in this instance, well, we think we would still look to whether or not Mr. Wolfe was treated in a disparate fashion. So the case is not over. Okay. All right. You'll get your full rebuttal. Thanks for answering our questions and we'll hear from Ms. Hasbrook. Thank you. Good afternoon. Denise Hasbrook for U.S. Steel. We, of course, urge that the summary judgment ruling be affirmed. And this being de novo, I will start with the regarded as prong, unless you have other questions to move me away from that. But we go back to Sutton that required some form for the major life activity of working. If there's a misperception on that major life activity, which is what they're claiming, and that the company actually thought he could not perform a broad range of jobs, Sutton said that there should be evidence of the geographical area that he could work, the number and types of jobs, the similar skills of those in the geographic area should all be studied. And none of that was put forward in the evidence here. So Wilkinson's testimony, I don't know if I'm paraphrasing that or the district court's opinion, but he was asked if there would be an opportunity for a person with an ocular vision to work within this facility. He responded as follows, looking at our jobs from the point of view that I have, I told them no. And I don't know, it's kind of unclear what he means. I can't tell if he's saying his point of view is the whole plant, because the question is about the facility. The question is, do our jobs relate to the whole plant or the utility technician's jobs? Yeah. And it's ambiguous, isn't it? Well, if you read the entire, I mean, this is just plucked right out of the deposition. And if you read the entire deposition, I mean, at that point, he, as you pointed out, he's the hiring manager for the utility 2 technician job. That's the only thing that was considered here, and the record is very clear on that. So as the hiring person, he testifies in his deposition that that job is performed all throughout the plant. This is just one big moving part, this plant, this heavy industrial. So they are all over the plant. So we believe that he made it very clear when he said, obviously, I thought about it for a while, looking at our jobs, the only thing he was talking about in his deposition at all was utility technician jobs. That's the only thing he could be talking about from the point of view he has as the hiring manager. I told them no. So I see. So your point is when he says the whole facility, he's not talking about all jobs in the facility, just the fact that this one job is throughout the facility, and he's regarding him as not being able to do that job. That's right. And that is our position, Your Honor. And Dr. Sabo testified in her deposition that there were monocular individuals in the facility, obviously not doing utility technician jobs. But we believe that the record is clear that there was only one job that he was ever looked at by everyone in the entire individualized inquiry, and it was the utility technician 2 job that takes the individual throughout the entire plant. And with respect to the broad category of jobs, on pages 11 and 12, and going back to the geographic area inquiry that Sutton puts forward... If I'm getting this right, if you're right about the regarded as point, your theory is there's no ADA claim at all because he's just, quote, not disabled. That's right. That's right. They chose to proceed simply under the regarded as theory, and there's no dispute on that. And on pages 11 and 12 of his brief, he lists the many jobs that he had in the steel industry. So it's very much like Sutton, where they said those airline pilots could be co-pilots, they can do other things in the airline industry, so therefore they were not precluded from a broad class of jobs. Well, he, by his own brief, lists out the other jobs in the steel industry that he has done, and other jobs in correctional facilities, and so he's not precluded from a broad class of jobs. He's simply precluded from this particular job, and that doesn't meet the pre-2009 amendments in Sutton. We also look to this court's ruling in Mahan v. Crowell, again, looking at that kind of geographical evidence to show that broad class of jobs that is not in the record here. In that case, the plaintiff put forth evidence that he could perform 53 percent of the jobs in the market by expert testimony. This court said that even that didn't meet the extremely high burden, because he could do more than half of the jobs in the geographic area. Certainly, this one phrase plucked out of John Wilkinson's deposition, when read as a whole of what he was doing and what his jobs were, cannot meet this very, very high regarded as standard. But if it does, and if this court finds that it does, then we move on to the individualized inquiry, which we do agree was made here, and certainly there were objective measures. His vision findings of no vision and one eye is undisputed. They were weighed against Federal Motor Carrier Act-based guidelines to get that two EZ rating, and Judge White, to respond to your question regarding Keith, we believe this is a very different case from Keith. In Keith, there were seven different accommodations identified by the potential supervisor. There was expert testimony that lifeguards use their vision for the zone of protection that they do, and that this particular individual had the ability to hear, through cochlear implants, cries to his attention. This is a very, very different case. Also in that case... How does an individualized inquiry work if you have certain vision requirements? You just say, these are what they are. Is your view that if you have those requirements, you give the person an eye test, they don't satisfy, and that's the end of the discussion? Is that how this works? Well, first of all, the requirement has to be a business necessity, and we'll get to that, but assuming that they are, and there is a good business reason, a reasonable reason for them, in this case, this is objective, because you either meet 20-40 in one eye, or you don't, and here he did not. I think that there's no need for an individualized inquiry, except whether the person meets the standards established by business necessity. There is no case law that we have found that requires, then, some type of reasonable accommodation analysis for this person. Under Albertson, the employer... Let me ask the question, what if you have objective criteria that you've formulated, the person fails to meet those criteria, nevertheless, as a factual matter, the person can do the job? What happens there? We believe that under Albertson, the person doesn't get the job, because Albertson, the U.S. Supreme Court stated what you're describing is a qualification standard, and a qualification standard like that, that screens out individuals with a disability, are acceptable, as long as that standard is reasonably based upon the position. This was covered in this case, through the testimony of Dr. Sabo, who related the business necessity of this to the Federal Motor Carrier Act, and the individual duties of the job. There's no individualized inquiry necessary? There is an individualized inquiry as to whether the person meets the bona fide qualification standard. For example, in the Holiday case, where the employer had what they said was a standard that they had to have a certain strength in order to have the police department do the job, in that case, they didn't do an individualized inquiry, and they just said, oh, they have AIDS, and therefore, that person is not strong enough. That's the kind of individualized inquiry that needed to be done on that individual. How strong are they? Do they meet those business necessity goals? And it wasn't done in Holiday. In Keith, if the objective criteria is reasonable, saying that you have to meet the business necessity, you have to be able to hear, then you don't have to go any further. You don't have to ask whether the person can nevertheless do the job. That's right. So why did he win in Keith? The reason that they won in Keith is it wasn't reasonable. There was evidence put out that the American Red Cross was certifying lifeguards. There was a university who was certifying lifeguards also who were deaf. So the qualification standard, the Albertson standard, wasn't reasonable. There would certainly be difference of opinion on whether it's reasonable to require that somebody be able to hear. So what's the standard for reasonable? I mean, if you have ten monocular people that can do these jobs, even though you've come up with some objective criteria, I mean, when does it become a jury question whether it's reasonable? Let's say you have people that can do the job. Why is it reasonable to exclude them? And actually, the standard is business necessity, and it's grounded in part on reasonableness. But there would have to be something in the record here to challenge that business necessity. And there very well could have been. The two doctors that testified, Dr. Wannan and Dr. Wickstrom, in favor of the plaintiff, could have put forth evidence that to a reasonable certainty this was not a business necessity standard grounded upon good medical science. And that, we submit, would have created an issue of fact on that. But there's nothing in this record on that. Instead, all those physicians did was look subjectively, not at U.S. Steel's operations or its reason for making the rule, but it just looked subjectively at this particular person and said, well, he can move his head a little bit and be able to do this, and looking at it subjectively. If there's nothing on the other side, like there is here, then Albertson, we maintain, kicks in. And the Albertson rule by the U.S. Supreme Court is that qualification standards are acceptable as long as they are found to be a business necessity. What's the case that says that you define business necessity by reasonable? Well in order to have the business necessity, there has to be, under Albertson, it has to have a, it has to, the standards have to be a business necessity, and then Monette took that out and required it there to be some evidence that there is a business necessity for that standard. Right. I'm asking you where it's defined as reasonable. I don't have a site for that, but there has to be something in the evidence challenging that business necessity. The employer, as Judge Helmick pointed out... But the way isn't enough to show that this particular employee can do the job, and therefore this arbitrary standard is not necessary. No one, because no one has pointed in the record, there is no evidence that this is an arbitrary standard. The evidence is in the record, and as Judge Helmick pointed out, the employer met their burden of putting Dr. Raven's testimony in and Dr. Sabo's testimony that these... What's the definition of necessary? Something that you need to do for a particular purpose, right? And it has to be tied to the job description and the business. Okay, so you need this standard to keep everybody safe, because, and you need that standard because people who don't meet it can't do the job properly. And so if somebody presents evidence that, look, here's a person that doesn't meet the standard who can do the job properly, that's evidence that you don't need that standard. We believe that that is not what Albertson required. It just required a qualification standard that was related to the job description. So now it only has to be related. You don't even have a reasonableness. It has to be objectively related in some way, and certainly an issue of fact can be created on that. It could be in the record by an affidavit on the other side by someone saying that this is not reasonable in the industry. There is nothing here that we can point to that maybe Viking Industries or the other burger industries may have not been very safe places. We don't know why he was able to work there or if he was doing the same job. Just making sure what the doctrine is. So I mean this questioning with Judge White, I just want to make sure this is the test on VADA as opposed to some other discrimination statute. So you can still not hire somebody even though they can perform the quote essential functions of the job. That's Judge White's point. The person can perform the essential functions of the job. You can still not hire them if there's some medical problem that means they can't satisfy certain qualification standards which are called a quote business necessity. Now all those words I've quoted, are those from the ADA and ADA regs or are those from other anti-discrimination statutes? Well they are from a disparate treatment setting. And that brings to the point that this is really a disparate impact case. I mean this is really what they argued below. They never put in any evidence that someone similarly was doing a disparate treatment case. In a disparate treatment case you can just say it was intentional. That's true but I mean we believe that they were going. There's a lot of rabbit holes here I'm trying to avoid. Under the ADA there is a business necessity defense. Yes. And the way that works is the burden is on the defendant to establish it and then the plaintiff can come back and say no, no, no, that's flawed for these reasons. Yes. But the ADA itself says and now I'm talking specifically in a disparate treatment case so forget what you think they were doing. In a disparate treatment case, if you have a business necessity, as long as it's upheld, it doesn't matter that the plaintiff can satisfy the essential functions or features of the job. Yes. And that's true in all ADA disparate treatment cases. Now what happens if it's an ADA disparate impact case? Is there anything I've just said that is no longer true? Not that I can point to. So it doesn't really matter what kind of case this is? No. Okay. Alright. Thank you. Mr. Foreman. Thank you. We want to be clear that U.S. Steel considered more than just the opinion of Mr. Wilkinson in determining not to give Mr. Wolfe a job. Okay. So where else should we look on that point? Because they gave him, they also considered two classifications that Mr. Wolfe received. One of them 2M, keeping him from doing any job for which he came within six feet of machinery or hazardous equipment. Another classification which rated him as 2EZ, meaning that he could not... How many years had he worked at this plant? Or plants like this? Nineteen, your point is that he was disabled and couldn't perform any job. And how could anyone at this plant think that given that they had lots of monocular individuals? This plant had lots of monocular individuals? I thought there were others. In other jobs, not on this job but in other jobs. I thought there were other people in the plant. No? No. According to Dr. Sabo, they all worked in the office or most of them worked in the office. So, but I do want to address that point. Why isn't that responsive to what I was saying? If you're... The point of disability is you can't do any jobs. Not just jobs in the plant floor, you can't do any jobs. And if this company was hiring other people with monocular vision and they were in the back office, I don't understand why that's not showing that they didn't regard people with monocular vision as people that couldn't perform any jobs. Well, the rationale behind it was that the monocular vision precluded him from performing any job which required average or above average visual acuity. Any job in which he would come within... And we're just looking at a range here under Sutton. And we're just trying to expand it. So, they're looking at jobs which would keep him within six feet of machinery. And these are the other considerations which were made. It wasn't just manufacturing store jobs, manufacturing floor jobs. The rationale went far beyond that. Any job which operated mobile equipment, any job which required average or above average visual acuity, and any job which required you to come within six feet of machinery. That is a huge range of jobs. And that was the rationale they used. They didn't solely rely on Mr. Wilkinson. Also, Mr. Wilkinson said... It just sounds like they're saying you can't do jobs that require a certain type of vision. That's not saying people with monocular vision can't do any jobs. Yes, but they measured the impairment and they found that... It's simply just a... I'm sorry. I need to collect myself on it. But they... Could you repeat the question? I apologize. No. You were being helpful in saying all this evidence. But every single piece of evidence you said was connecting monocular vision to a certain type of job. Nothing you said showed a view that if you have monocular vision, you can't do any jobs in this plant. And that's what required as requires. Regarded as requires. It's not that you're regarded as having a disability as to this set of jobs. It's you're regarded as having a disability which is defined to mean you can't do any of these, any jobs. Not these jobs, any jobs. Well, it's not any job. It is a broad range of jobs under Sutton. Okay. All right. And they're looking at 29 CFR 1630. It's long. But... And they're only focusing on a single statement. The following factors may be considered in determining whether an individual is substantially limited in the major life activity of working. Now, there are two others. So the standard from Sutton is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes. So what we're arguing is not that he was... They regarded him as being able to do any job, but they regarded him as unable to do a broad range of jobs. I'm over time. You think Sutton answers this question to you favorably? That you're allowed to slice it up into this class? Because that sounds like your key point here. That as long as it's a classification of jobs, he's regarded as not being able to handle, and it's a broad enough group, that counts as regarded as disabled. That's correct. It's either or. And you think Sutton is the case? If I read that, that'll prove you right? Yes. That is the statute. The language is either a class of jobs or a broad range of jobs in various classes as compared to an individual who's not having comparable training skills and abilities. I just want to clear up one other thing, too. One of your arguments is the business necessity doesn't apply here because this is not a disparate impact case, correct? Correct. Assuming that we disagree with you on that and that we find that it or one of its cousins also applies to disparate treatment, are you making the argument here that there was no business necessity for the application of this monocular vision standard to this type of job on the shop floor? We are making the argument that that is an affirmative defense, and there has been no showing which would carry U.S. Steel's burden of proof on that point, and it therefore is a jury question. What they have shown is they said, look, we mirrored these regulations for interstate truck drivers. And our position is that is not enough to carry their burden of proof. Absolutely. We think it is still a matter for the trial of fact. They also have Wilkinson, who was the supervisor of these utility technician workers. But there is no indication that he was involved in creating that policy, the qualification standard we are talking about, if we are on the same page. I don't know that we are, because if you have the guy that actually supervises the workers on that floor and says these would be the dangers that would be posed by a monocular vision guy, that seems to provide, arguably at least, the business necessity for the underlying rule, whether he was involved in formulating it or not. So what am I missing there? Well, I guess we are just looking to whether or not they have established enough evidence to prove the affirmative defense. And we maintain that there is an issue of fact on that, because the motor carrier regulations were unrelated, and it goes to weight, and we believe that Mr. Wilkinson's basis for it was stereotype and not something that should be considered by this court. What is your competing evidence besides the fact that your client can do the job safely, in your view? Well, we have his 19 years of experience doing the job safely. Okay. What else? Oh, sorry. Yeah, what else? Oh, well, Mr. Wolfe, I mean, no, he did not work in this facility, but he has reviewed video of it, of how things go on in this facility, and said these are the same types of jobs that I did at the other plants. We have his record of doing it. We have the opinions of two physicians who indicate that he can perform this job safely. And again, it is an affirmative defense, Your Honor. But I thought the affirmative defense only applied, was only relevant to people that came forward and said, I can handle the essential features of this job. And I thought the way this worked was, you had someone come forward and say, either themselves or with their doctor, I can do these things, and I can do them safely, but that does not get you to a jury trial if the defendant says, well, we've just got this qualification. It's a business necessity. And if you don't challenge that with competing evidence about that test, that rule in this industry, it just doesn't matter that you've got lots of evidence that the individual can do this safely. Thank you. I understand. In this case, that is an affirmative defense by the plain text of the statute. I got it. Okay. Only to disparate impact. This is a disparate treatment case. And what the district court did is they... Okay. All right. Well, if you're wrong about that, that there's a different test for disparate treatment versus disparate impact, is the case over? And the business necessity defense is otherwise supported? No, Your Honor. And there's two reasons for that. The first is, we do not think that there was a standard enacted here. We think that... They had no standard at all. They just made it up. Well, they have two different writings. One of them supports us. It says, take into account the history. The other one doesn't say anything, but there's been no evidence that one was in place and the other was not in place, or they shouldn't be read in conjunction with each other. All right. Ultimately, we think what happened here is what happened in Keith, in that individual's subjective opinions were used. Okay. We do know Keith. Okay. And the second one is, we do not think that they've met their affirmative defense to show business necessity. Enough evidence to show it wasn't necessity. Okay. All right. Well, thank you both for listening to our questions and answering them. We appreciate that. It doesn't always happen. And thank you for your briefs. The case will be submitted.